IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KYNA MITCHELL,
*Individually and as Mother and
Next Friend of D.M., a Minor*,
    **Plaintiff,**

v.                  No. 3:15-cv-00823-DRH-SCW

ALTON MEMORIAL HOSPITAL,
and UNITED STATES OF AMERICA,
    **Defendants.**

## ORDER

**HERNDON, District Judge:**

Before the Court is the government's Motion to Dismiss Plaintiff's First Amended Complaint, or in the alternative, for Summary Judgment (doc. 54). Plaintiff opposes the motion (doc. 56). Supplemental briefing was filed by both parties on the issue of the statute of limitations (docs. 74, 79). Based on the following, the Motion to Dismiss, or in the alternative, for Summary Judgment, is **GRANTED** as to the claims against defendant, United States of America.

### I. BACKGROUND

**A. The Amended Complaint**

On May 17, 2017, Kyna Mitchell ("plaintiff"), individually and as mother and next fiend of Infant DM ("D.M."), filed an amended complaint naming as defendants the United States of America and Alton Memorial Hospital, alleging violation of the Federal Tort Claims Act ("FCTA") pursuant to 28 U.S.C. § 2674

(doc. 45). Specifically, plaintiff states on or about February 20, 2007, she was admitted to Alton Memorial Hospital for induction of labor due to complications stemming from preeclampsia[1] (*Id*. at ¶ 3). During labor, physician Dr. Saji Jacob ("Dr. Jacob") performed a vacuum assisted vaginal delivery which caused D.M.'s posterior shoulder to become stuck behind plaintiff's pelvic bone, further complicating delivery (*Id*. at ¶¶ 4,5). As a result, D.M. suffered permanent nerve root damage and was diagnosed with a brachial plexus injury, requiring D.M. to undergo physical therapy after birth for weakness and lack of mobility in her left shoulder and arm (*Id*. at ¶ 24). Plaintiff asserts claims of defendants' violation of appropriate standards of care and negligent conduct, pain and suffering, future medical treatment, and future loss of income and earning capacity—pursuant to § 2674. For relief, she requests judgment against defendants and just damages.

**B. Government's Motion to Dismiss or for Summary Judgment**

The government filed its Motion to Dismiss Plaintiff's First Amended Complaint, or in the alternative, for Summary Judgment (doc. 54) in response, arguing that plaintiff filed her Original Complaint in July of 2015 (some eight years after D.M.'s birth) before the government was adjoined as a defendant (*see* doc. 1); then named the government as defendant and subsequently dismissed the claim before exhausting administrative remedies as required under the FTCA—all prior to rejoining the government as defendant in plaintiff's Amended Complaint (doc. 54).

---

[1] Preeclampsia is a pregnancy complication characterized by high blood pressure and damage to the liver and kidneys usually beginning after 20-weeks of pregnancy.

The government insists a "fresh suit" must be initiated after administrative remedies were exhausted, and because it was added as defendant in plaintiff's Original Complaint—and purports to be a defendant throughout the overall action—FTCA claims are prohibited against it (*Id*.). Moreover, the government maintains plaintiff had 2-years from shortly after D.M.'s birth, on or around February 23, 2007 to bring her claim, and therefore has run afoul of FTCA statute of limitations. As a result, the government requests the Court dismiss the instant action, or in the alternative, grant summary judgment in its favor on the following two grounds: (1) failure to exhaust administrative remedies prior to commencing suit; and (2) failure to commence action prior to the running of applicable statute of limitations (doc. 54).

In opposition, plaintiff contends the government was dismissed without prejudice from the original action *explicitly* to allow for exhaustion of administrative remedies and the refiling of an amended complaint (doc. 56). Plaintiff argues a "fresh suit" *was* initiated after the denial of her claim with the Department of Health and Human Services ("DHHS") on February 6, 2017; and, from November 6, 2015 through May 17, 2017, Alton Memorial Hospital was the named defendant—not the government—because the effect of voluntarily dismissing a lawsuit is to behave if the suit had never been brought (*Id*. at 2). Therefore, plaintiff vies exhaustion was complete prior to filing her amended

complaint, and further argues having no knowledge of doctor-caused injuries until retaining counsel and filing the original complaint in 2015.[2]

## II. ANALYSIS

### A. Effect of Rule 41 Voluntary Dismissal

Rule 41 of the Federal Rules of Civil Procedure permits a plaintiff to request voluntary dismissal of a lawsuit without prejudice by way of court order. *See* FED. R. CIV. P. 41(a)(2) (explaining Rule 41 dismissal is without prejudice unless court order states otherwise). Put differently, *voluntary dismissal essentially erases a lawsuit. See Nelson v. Napolitano*, 657 F.3d 586, 587-88 (7th Cir. 2011) (stating generally that suit voluntarily dismissed under Rule 41(a) is treated as if never been filed; and unless stipulation states otherwise dismissal is without prejudice); *cf. Smith v. Potter*, 513 F.3d 781, 782-83 (7th Cir. 2008) (litigation generally depends on existence of live claim).

Here it is undisputed both parties agreed to dismiss plaintiff's original complaint without prejudice, and further, plaintiff was permitted the right to recommence the action subsequent exhaustion of administrative remedies. Once the Court granted the Joint Motion to Dismiss Plaintiff's Original Complaint without prejudice[3]—*the government was no longer a litigant*. Therefore, the government's contention that dismissal of an FTCA claim is obligatory pursuant

---

[2] Further, plaintiff argues applicability of equitable tolling regarding FTCA claims to counter defendant's statute of limitation defense (*Id*. at 11-14).

[3] *See* Minute Order Granting 15 Joint Motion to Dismiss without Prejudice, Mitchell v. Jacob et al, No. 3:15-cv-823-DRH-SCW (S.D. Ill. Nov. 6, 2015), ECF No. 16.

4

to 28 U.S.C. § 2675(a)[4] supported by rationale used in *McNeil v. United States*, 508 U.S. 106, 112 (1993)[5] is erroneous. "[W]hen, as here, a case is voluntarily dismissed pursuant to Rule 41(a)(2), the Federal Rules of Civil Procedure control and the action is treated as if it had never been filed." *Robinson v. Willow Glen Acad.*, 895 F.2d 1168, 1169 (7th Cir. 1990); *see also Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (Rule 41(a) "speaks of dismissing 'an action'—which is to say, the whole case."); *Jenkins v. Village of Maywood*, 506 F.3d 622, 624 (7th Cir. 2007) ("a Rule 41(a) voluntary dismissal terminates the case all by itself"). Plaintiff is correct when she states that no claim existed against the United States at the time she moved to join the United States after exhaustion of administrative remedies, thus distinguishing the government's reliance on *Collier v. Caraway, et al.,* No. 14-cv-365-JMS, 2017 WL 347481 (S.D. Ind. Jan. 24, 2017), *Old National Trust Co. v. United States*, No. 12-cv-0197-MJR-DGW, 2013 WL 3944432 (S.D. Ill. July 31, 2013) and *Worthem v. Hall*, No. 07-cv-7255, 2009 WL 5126117 (N.D. Ill. Dec. 23, 2009).

---

[4] An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

[5] *See McNeil*, 508 U.S. at 112 (stating "[t]he most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process.").

5

Plaintiff is accurate in reasoning the government was no longer a defendant prior to the filing of her Amended Complaint.[6] Therefore—upon exhaustion of administrative remedies on February 6, 2017[7]—plaintiff was permitted to initiate an FTCA claim against the government. *Cf. Richmond v. Chater*, 94 F.3d 263, 267 (7th Cir. 1996) (explaining after dismissal without prejudice plaintiff may file new complaint and filing fee against dismissed defendant). However, agreeing with plaintiff that, procedurally, an FTCA claim stands based on the underlying facts of this case, does not mean the Court agrees that such claim was timely filed.

**B. Government's Motion for Summary Judgment to Dismiss Plaintiff's Claim as Time-Barred Under the Two-Year Statute of Limitations Period**

**<u>i. Legal Standard</u>**

Having disposed of the voluntary dismissal and exhaustion of administrative remedies issue, the Court is left with arguments regarding the FTCA's statute of limitations ("SOL"). In its motion, the government seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Federal Rule of Civil Procedure 56. The Court, having reviewed all relevant material, including the parties' supplemental briefing on the SOL[8], analyzes this

---

[6] On May 17, 2017, the magistrate entered an order granting plaintiff's First Amended Motion to Amend the Complaint and Join the United States. *See* Doc. 44. Plaintiff's Amended Complaint was filed the same day. *See* Doc. 45.

[7] On May 3, 2016, plaintiff filed an administrative claim with the Department of Health and Human Services. Tellingly, that claim was denied as untimely by the Department on February 6, 2017, because the administrative claim was received more than two years after the claim accrued and the two-year statute of limitations period had expired. This denial exhausted plaintiff's administrative remedies, *See* doc. 54, exhibit 2.

[8] The Court granted the parties permission to supplement their briefs on the statute of limitations issue on December 12, 2017, (doc. 71), due to new relevant evidence found during written discovery and the plaintiff's deposition taken on December 6, 2017 (doc. 70). The government

issue under Federal Rule of Civil Procedure 56. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment[.]" *Old Nat. Tr. Co.,* 2013 WL 3944432, at *2, *quoting* Fed. R. Civ. Pro. 12(d). A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment will be denied unless the evidence is such that no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

### ii. FTCA Statute of Limitations

Under the Federal Tort Claims Act, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was present." *See* § 28 U.S.C. 2401(b). "[A]ll that is required to start the statute of limitations running is knowledge of the injury and that the defendant or an employee of the defendant acting within the scope of his or her employment may have caused the injury." *Arteaga v. United States*, 711 F.3d 828, 831 (7th Cir. 2013). It is important to note that accrual of a claim under the FTCA is not contingent upon a plaintiff

---

filed its supplemental brief December 20, 2017, (doc. 74) and plaintiff filed her supplement on January 9, 2018 (doc. 79).

7

being aware that a defendant's negligence caused the injury – simple knowledge of the "potential existence of a governmental cause is sufficient to start the clock ticking." *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011). Here, the government contends that plaintiff had knowledge of a "government-triggered" injury taking place shortly after plaintiff gave birth, thus barring plaintiff's claim with prejudice by many years. On the other hand, plaintiff maintains she neither knew, nor had reason to know, that D.M.'s injuries were allegedly caused by Dr. Jacob during delivery. Plaintiff argues she did not learn any injuries were conceivably caused by Dr. Jacob until retaining counsel and filing her state court complaint in February 2015. For the following reasons, the Court agrees with defendant that plaintiff's claims have run afoul of the SOL and thus, are time barred by the two-year statute of limitations period contained in the FTCA.

### iii. Statute of Limitations Accrual Date

#### a. FTCA Claim Accrual Standard

An FTCA claim accrues when either: (1) plaintiff possesses enough knowledge to "tip him off" that the government may have caused the injury; or (2) a reasonable person in a similar position would have known enough to make a deeper inquiry into whether the government may have caused the injury. *See Blanche v. United States*, 811 F.3d 953, 958 (7th Cir. 2016); *Arroyo*, 656 F.3d at 669. Here, it is clear that under the objective or subjective standard, plaintiff had enough knowledge to consider that a doctor-related cause may have created her child's brachial plexus injury soon after giving birth. Briefly, plaintiff delivered

baby D.M. on or around February 20, 2007 at Alton Memorial Hospital. Am. Compl., doc. 45, ¶¶ 3-4. Her delivering doctor, Dr. Saji Jacob, at all relevant times, was an employee of Southern Illinois Healthcare Foundation, an entity of the United States of America eligible for FTCA coverage. *Id*. at ¶¶ 18-19. During labor, plaintiff suffered a difficult delivery and vacuum-assistance was needed to aid in the birthing process. While the vacuum was facilitated, D.M. experienced a shoulder dystocia. *Id*. at ¶¶ 4-6. Upon delivery, D.M. was immediately diagnosed with a left clavicle fracture[9] and was discharged with instructions to complete range of motion exercises to help increase mobility in the injured left arm and shoulder.

While D.M. was born in 2007, plaintiff did not file her original state court law suit until February 20, 2015, some eight years after D.M's birth. However, plaintiff knew her delivery had been vacuum assisted before she was discharged from the hospital. Pl's deposition, 27:4-14.[10] Plaintiff signed discharge instructions educating on the need for physical therapy for D.M.'s left arm, demonstrating the concrete knowledge of a birth injury. *Id*. at 16:1-17:12. Plaintiff testified at her deposition that within two days of D.M.'s birth she was already entertaining suspicion of a doctor-related cause to her baby's injury in that she felt there "was just something that wasn't fully told" to her by medical personnel, *id*. at 12:9-25, and that by the time she started seeing her pediatrician,

---

[9] The further diagnosis of a brachial plexus injury was made by D.M.'s pediatrician, Dr. Tolentino, a mere months after birth.

[10] All references to plaintiff's deposition indicate the deposition taking place on December 6, 2017, unless otherwise noted.

9

Dr. Tolentino, on or around March 20, 2007, plaintiff had begun to suspect that D.M.'s injury was caused by a medical mistake made by Dr. Jacob. *Id*. at 37:13-24 ("Q: At some point did you begin to suspect that your daughter's injury was caused by some medical mistake that Dr. Jacob made during the delivery? A: Yes. Q: When did you begin to suspect that might be the case? A: When she started – once I talked to Tolentino and found out all those different therapies the different things she had to go through."). Despite these events, even taking as true plaintiff's argument that she did not <u>*objectively*</u> possess enough information to tip her off that Dr. Jacob may have caused the injury until she first filed suit in 2015, a reasonable person in her circumstance certainly knew enough to probe deeper into the cause of injury thus starting the two-year clock to file her complaint.

### b. Mere Knowledge of the Potential Existence of a Governmental Cause is Sufficient to Start the SOL Clock Running

Plaintiff tries to argue that she could not possibly have learned of Dr. Jacob's potential negligence and filed suit until she received an expert opinion that her child's injury was caused by medical negligence. This is simply not true. The Seventh Circuit held in *Blanche* that there is not a mechanical point in time during litigation that accrual begins. 811 F.3d at 960-61. Instead, accrual begins when a plaintiff has reason to suspect that the injury suffered relates in some way to the medical treatment received. *Id*. at 961, *quoting A.Q.C. ex rel. Castillo v. Untied States*, 656 F. 3d 135, 142 (2d Cir. 2011). In the underlying case, plaintiff was informed of an injury to her child upon birth prior to discharge from the hospital, was instructed to take her child to physical therapy for said injury,

and knew that her delivering doctor had to use a vacuum to assist labor. Plaintiff testified at her deposition that she had suspicions of medical personnel almost immediately, and within 1-2 months, suspected Dr. Jacob's to be at fault.

Despite plaintiff's assertions, these underlying facts make her case unlike *E.Y. ex re. Wallace v. United States* and *Arroyo*. In *E.Y. ex re. Wallace,* plaintiff gave birth in April 2005 to a child who was diagnosed with diplegic cerebral palsy, but not until one year later in May 2006. 758 F.3d 861, 864 (7th Cir. 2014). Shortly after the diagnosis, plaintiff sought legal counsel and signed a retainer in November 2006. *Id.* at 864. Medical records were requested and received in completion by October 2007. *Id*. The plaintiff filed suit against her prenatal care providers and the delivering doctor in December 2008. *Id.* The Seventh Circuit held that the suit was timely under the FTCA, as the earliest time the plaintiff had adequate information to tip a reasonable person off to inquire whether her medical providers caused the child's injury, was when she received the pertinent medical records. *Id*. at 868. In *Arroyo*, a newborn suffered an infection passed by the mother's blood during delivery due to the mother not receiving certain diagnostic tests typically performed in the last month of pregnancy as the baby came weeks premature. 656 F.3d at 665. The mother did not learn that these tests were protocol under giving birth to her second child and seeing an attorney advertisement on the television stating that the type of injuries sustained by her first child could be due to the negligence of doctors. *Id*. at 666. The court held that the FTCA claims did not accrue until the birth of the second child, as a

reasonable person did not have reason to believe until that point that any negligent act could have caused the baby's infection. *Id*. at 670-71.

"When determining the accrual date of a plaintiff's FTCA malpractice claim, courts must decide when the plaintiff knew enough (or should have known enough) to suspect that their injury had a doctor-related cause… accrual does not wait until the plaintiff learns that their injury was caused by a doctor's negligence" *id*. at 673; "An individual does not need to have reason to believe that the relevant governmental conduct was negligent; mere knowledge of the potential existence of a governmental cause is sufficient to start the clock ticking." *Id*. at 669. Unlike the cases plaintiff cites, plaintiff received a diagnosis almost immediately upon birth, not one year later as in *E.Y. ex re. Wallace*. Additionally, plaintiff was aware of the vacuum-assistance in her delivery – she did not need medical records to either determine or to learn about any source of potential medical negligence; nor did she need any advanced medical degree or knowledge to understand that by its very nature, the vacuum used during delivery could contribute to cause, or solely cause, the shoulder dystocia which led to the clavicle fracture and resulting nerve damage. However, even if she did need medical records to rely on, she is out of luck in arguing caselaw that held no claim accrual until attorneys consulted and records received, as plaintiff indeed requested medical records numerous times within the first two years from D.M.'s birth.

By June 2007, 4 months after D.M.'s birth, plaintiff had already sought out legal representation for a lawsuit related to D.M.'s arm/shoulder injury. On June

4, 2007, Alton Women's Health Center – the branch of Southern Illinois Healthcare Foundation where plaintiff was seen by Dr. Jacob – received a request for medical records on plaintiff's behalf from the law firm of Brown & Crouppen. And, on October 6, 2008, Dr. Jacob received medical record requests from a separate attorney on behalf of plaintiff, Mr. Jonathon B. Fleisher, of Karlin & Fleisher, L.L.C.  It is difficult for the Court to imagine why plaintiff would be consulting with multiple law firms and requesting medical records if not for the reason that she suspected a doctor-related cause to D.M.'s birth injury.  As stated above, plaintiff had beliefs that Dr. Jacob was at fault as early as March 2007, and she further stated at her deposition that she suspected she had a lawsuit against Dr. Jacob as early as 2007 or 2008.  Pl.'s depo, 47:16-19.  It is very clear that not only would a reasonable person "armed with such knowledge . . . be able to discover within the statutory limitations period the rest of the facts needed for drafting a complaint that will withstand a motion to dismiss" (*Arteaga*, 711 F.3d at 832) but that a reasonably diligent person, in the tort claimant's position, "reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause[.]  *Id*. at 831.

### c. A Reasonable Person in Plaintiff's Position Possessed Enough Knowledge to Trigger Running of the SOL

The Court is cognizant of plaintiff's argument that there can be "ghouling consequences" that stem from a rule that the law requires reasonable persons who suffer injuries under the care of medical professionals to always attribute those injuries to the care received.   Doc. 79, pg. 2, *citing Drazan v. United*

*States*, 762 F.2d 56, 59 (7th Cir. 1985) and *Arroyo*, 656 F.3d at 671-72. As such, that is not a principle this Court is instituting here. However, the underlying facts of this case demonstrate that a reasonable person in this particular plaintiff's position possessed enough knowledge to start the SOL running. Unlike the cases distinguished *supra*, the undersigned is inclined to liken the matter to *Arteaga* and *Blanche*. In *Arteaga*, the mother of a child injured at birth brought claims under the FTCA. Like D.M., this baby suffered a shoulder dystocia during delivery in July 2004, and nerves in the shoulder were injured resulting in a brachial plexus injury. 711 F.3d at 830. A few months later, the mother obtained medical records pertinent to the birth and consulted with an attorney. The initial attorney recommended against suing, just like the case at bar. *Id.* Fifteen months later, the mother consulted another attorney who agreed to represent her but withdrew some 16 months later. Two attorneys later and the mother finally had retained counsel and filed suit in March 2010, six years after the birth of her child. *Id*. The Seventh Circuit Court of Appeals held the FTCA claim time-barred as the claim accrued shortly after birth since the mother had suspected early on that the injury could have been preventable, had obtained medical records, and had consulted with attorneys.[11] *Id*. at 831. Because of this, the mother "made her herself subject to the ancillary principle that the statute of limitations begins to run not only when the prospective plaintiff discovers who caused the injury, but

---

[11] The information and circumstances in *Arteaga* surrounding attorney consultations and lag between search for counsel and the retaining of counsel very much mirror those in the underlying case and lay to rest any argument that the time it took to find representation stalled or tolled the statute of limitations.

14

also when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause." *Id* (internal quotations and citations omitted).

The facts of the case at bar fit squarely within those of *Arteaga*. They also square away within the fact pattern of *Blanche*, in which the plaintiff suffered a difficult delivery resulting in a brachial plexus injury to her infant. 811 F.3d at 956. Upon birth, the child had to be taken to the Intensive Care Unit where her right arm was placed in a splint. *Id*. Upon discharge, the mother was informed of the baby's diagnosis of a brachial plexus injury and understood that diagnosis as the reason for the child needing the splint. *Id.* Plaintiff quickly consulted with an attorney one to two weeks after delivering but did not retain him, *id.*, and did not seek another attorney for almost a year, whom she retained but who did not file suit until another year had past. *Id*. at 956-57. The Seventh Circuit held that plaintiff's FTCA claim was time-barred as a "reasonable person under the circumstances would have had enough information to inquire further into whether [the delivering doctor] caused" the infant's injury. *Id*. at 959. The facts in the present case align with *Blanche*, in that plaintiff also suffered a difficult delivery in which vacuum assistance was needed, plaintiff was informed of an injury to D.M. by discharge with directions to perform range of motion exercises, and plaintiff was also suspicious early on and consulted with attorneys about her case. A reasonable person in her position had adequate information to probe deeper into the potential government-cause.

### d. Plaintiff Did Not Diligently Search Out a Medical Opinion as to the Cause of D.M.'s Injury

The Court would also like to note that the present case is distinguishable from those in which the medical science landscape on causation had changed over time, tolling the SOL period, or, one in which a plaintiff diligently searches for an expert opinion tying their injuries to medical negligence but could not find one until time passes, thus tolling the SOL. Indeed here, the record demonstrates that plaintiff never sought out any medical opinion as to the cause of D.M.'s injury despite having beliefs that a mistake by Dr. Jacob was made and that she wasn't being told the full story of her infant's injury. *See e.g.* Pl. depo Aug. 31, 2016, 94:25-95:18, stating that in conversations with Dr. Tolentino, D.M.'s pediatrician, they never spoke about what could have caused the birth injury; Pl. depo, 36:8-25, never asked nor discussed with D.M.'s surgeon, Dr. Nath, the possible causes of D.M.'s injury. Based on plaintiff's knowledge of her delivery, her suspicions of Dr. Jacob, and her consultations with attorneys, it is glaring that she never asked for a causal opinion from any of the treating physicians she took D.M. to for care.

This takes the case of the realm of one in which the SOL does not start to run on a diligent plaintiff until medical science has caught up with their suspicions of doctor-related causation. *See e.g. Stoleson v. U.S.*, 629 F.2d 1265, 1270 (7th Cir. 1980) (SOL clock did not run until medical science confirmed the potential for doctor-related cause when plaintiff had the "presence of mind to seek professional advice from her physicians and BAAP's own physician" and elsewhere until she could garner an opinion on causation to her favor.) Here, it

appears all plaintiff had to do was ask to receive a causal opinion. Even in Dr. Jacob's deposition, while stating that it is possible for a brachial plexus injury to have multiple contributors, he testified that he did tell plaintiff that D.M.'s clavicle fracture most likely occurred when he and the delivering team were delivering the problematic posterior shoulder. Dr. Jacob depo, 176:20-178:9. The posterior shoulder/arm developed the dystocia when Dr. Jacob was performing vacuum assisted maneuvers, (am. compl., doc. 45, ¶ 5), and consequently, is the same shoulder/arm diagnosed with the more serious brachial plexus injury a mere few months later. Plaintiff should not be rewarded for standing passively by when she had all the channels available to confirm the possibility of doctor-related causation and draft a complaint able to withstand early dismissal.

### e. Private Actor vs. Governmental Actor

Finally, the Court would like to address plaintiff's argument that some of her early concerns regarding doctor-related causation as to D.M.'s injuries were directed only to Alton Memorial Hospital, a private actor. Pl.'s Supplemental Brief, Doc. 79, pgs. 7-10. This contention is a swing and a miss. In her brief, plaintiff tries to twist her answer to a deposition question to make it appear she was responding only as to Alton Memorial and its staff: Q: Did you feel at the time, I'm talking about while you were still at Alton Memorial Hospital, before you and your daughter were discharged, did you feel at that time like your daughter's arm might have a more serious problem than the medical people were indicating to you? A: Yeah, I felt like it was just something that wasn't fully told." Pl's depo,

17

12:9-16. It is clear that plaintiff is answering the question as to her time spent at Alton Memorial, which is where Dr. Jacob performed her delivery and where she recovered prior to discharge. Nothing in the answer indicates plaintiff only had concerns as to the private actor, Alton Memorial Hospital, as opposed to concerns against Dr. Jacob, the government actor.

Plaintiff further makes arguments to support that the SOL for an FTCA claim does not run simply from knowledge that there is some cause to an injury, but rather from knowledge of a governmental cause. The Court does not dispute this. Rather, the Court is disinclined to believe that plaintiff's early concerns of medical negligence were split between Alton Memorial and Dr. Jacob. As stated numerous times *supra*, plaintiff suspected Dr. Jacob made a mistake within months of giving birth. Pl. Depo., 37:13-24. Additionally, even if plaintiff's beliefs or knowledge could be compartmentalized between the two medical entities, "when a person suspects, or a reasonable person would suspect, that her injury was caused by negligent medical care, claims regarding other doctor-related causes of that injury that share a time and place with the injury's suspected cause also accrue." *Blanche*, 811 F.3d at 958. The negligence alleged by plaintiff occurred during her labor and delivery. Plaintiff cannot try to distinguish that different sources of medical-related causes occurred at separate times or places as she has already argued for permissive joinder stating that the United States could be joined as a party to her amended complaint for the specific reason that the events arose out of the same transaction or occurrence. Pl.'s Response, doc.

56, pg. 6. Accordingly, the Court finds no merit that plaintiff was aware of the potential liability of a private actor shortly after birth of D.M., but not of the governmental actor, Dr. Jacob.

### III. CONCLUSION

Based on the foregoing, plaintiff's claim under the FTCA accrued sometime within the first year after D.M. was born. As the original law suit was filed at least five years past the two-year limitations period, it is not important to discern the exact moment of accrual as it does not alter the outcome that plaintiff's claim against the United States is time-barred - plaintiff has failed to commence an action prior to the running of the applicable statute of limitations. Accordingly, the government's Motion to Dismiss Plaintiff's First Amended Complaint, or in the alternative, for Summary Judgment (doc. 54) is **GRANTED** on the grounds that plaintiff's claim runs afoul of the limitations period contained in the FTCA. The Court finds in favor of defendant, United States of America and against plaintiff, Kyna Mitchell. The Clerk of the Court shall enter judgment accordingly at the close of the case.

**IT IS SO ORDERED**.

Judge Herndon
2018.03.06
11:34:03 -06'00'

United States District Judge